IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| **Carlton J. Dillard,** ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | 1:16cv1060 (TSE/JFA) |
| ) | |
| **Dr. Kolongo,** ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

This matter comes before the Court on the Motion for Summary Judgment of defendant Dr. Nsekenene Kolongo of the Hampton Roads Regional Jail ("HRRJ"). Carlton J. Dillard, a Virginia inmate, filed this pro se civil rights action pursuant to 42 U.S.C. § 1983, alleging that Dr. Kolongo has been deliberately indifferent to his serious medical needs at that facility. For the reasons which follow, Dr. Kolongo's Motion for Summary Judgment will be granted. Also pending before the Court is plaintiff's Letter/Motion for Extension, which will be denied.

### I. Background

A. Plaintiff's Allegations

This lawsuit arises from plaintiff's allegations that Dr. Kolongo was deliberately indifferent to plaintiff's gastrointestinal disease; as will be seen, these allegations diverge significantly from the facts that emerged as the case progressed. Briefly, plaintiff alleged in the amended complaint that he began to vomit blood while he was confined in segregation at HRRJ in June, 2015. (Dkt. No. 7 at 5)[1] He was "taken to medical" and his vital signs were checked. Id.

---

[1] Plaintiff's initial complaint in the action was determined to be insufficient to state a claim for which relief could be granted, and in deference to his pro se status he was provided with an opportunity to submit a particularized and amended complaint. (Dkt. No. 3) The amended complaint was served on Dr. Kolongo and is the operative complaint in the lawsuit.

The following day he could not eat and was in pain, and a grievance he submitted came back stating that he would see the doctor soon. (Dkt. No. 7, handwritten p. 1 ) When plaintiff was taken to medical Dr. Kolongo said he might have acid reflux. Id. Two days later plaintiff was returned to the medical department because he had been vomiting blood into a towel, and when Dr. Kolongo checked plaintiff's vital signs he found that they were "off" and that plaintiff was "weak," and the doctor prescribed an antibiotic plaintiff identifies as "Flagolar." Id., handwritten p. 3. Plaintiff "stayed in pain" for three days until the medication was delivered. Id. At an unspecified time plaintiff had a stomach virus that caused him to vomit blood clots, but Dr. Kolongo gave him no pain medication. Id., handwritten pp. 3-4. Plaintiff "started vomiting more" and was returned to medical but Dr. Kolongo said he would not take plaintiff off the medication that had been prescribed. Id., handwritten p. 4. Plaintiff remained on "Flagolar" for three months and continued to feel nauseous, experienced trouble sleeping, and had headaches. At that point plaintiff was sent to the Harbor View Gastrointestinal and Cancer Unit, where he was placed under the care of a gastroenterologist and was scheduled to receive a colonoscopy and an endoscopy. Id., handwritten p. 5. The colonoscopy revealed that plaintiff was suffering from bleeding stomach ulcers which allegedly were caused by the "Flagolar" Dr. Kolongo prescribed. Id., handwritten p. 6. Plaintiff was placed in the "medical pod" in October 2015 by Dr. Hyack, who by then had succeeded Dr. Kolongo as HRRJ's physician, and was given unspecified medication every six hours, fed a bland diet, and provided with milkshakes and vitamins to help him regain the "drastic" amount of weight he had lost as the result of the vomiting. Id., handwritten pp. 6-7. The medication worked for a few months but "then the bleeding started to come back." Id.

The sole defendant plaintiff names is Dr. Kolongo, and as relief plaintiff seeks monetary damages.

B. Proceedings

On February 21, 2017, Dr. Kolongo filed a Motion for Summary Judgment accompanied by a memorandum and exhibits, asserting that: (1) plaintiff failed to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"); and (2) plaintiff establishes no claim of deliberate indifference. (Dkt. No. 29-30) Plaintiff was provided with the notice required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(J), and he filed a response to the Motion for Summary Judgment on March 16, 2017. (Dkt. No. 33) Defendant submitted a reply to plaintiff's response (Dkt. No. 35), and plaintiff has moved for an extension of time to "get everything in order." (Dkt. No. 36) For the reasons which follow, the Motion for Summary Judgment will be granted on the ground that plaintiff failed to exhaust administrative remedies prior to bringing this federal action, and in the alternative because the undisputed material facts demonstrate Dr. Kolongo was not deliberately indifferent to plaintiff's serious medical needs. Plaintiff's Letter/Motion for Extension, construed as a request to file a sur-reply, will be denied.

## II. Analysis

A. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on

the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts for which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

B. Undisputed Material Facts

Dr. Kolongo has supplied evidence which establishes the following facts. Dr. Kolongo, who is Board certified in internal medicine, was employed as a physician by NaphCare, Inc. to provide medical care and treatment to inmates at HRRJ from June 2012 until December 2015.

4

Def. Ex. B, Kolongo Aff. ¶¶ 1-2. Plaintiff entered HRRJ as a transfer from the Portsmouth City Jail on April 24, 2015; at the time, he weighed 164 pounds. Id., ¶ 5. His only health issues at that juncture related to allergies and asthma. Id., ¶ 6.

Contrary to plaintiff's allegations that he was taken to the medical department when he started vomiting blood in his cell in June 2015, and that he put in a grievance form which went unanswered the following day, there are no institutional records of any visits by plaintiff to the medical department or of any grievances filed by plaintiff in June 2015. Id., ¶¶ 7-8.

On July 3, 2015, plaintiff complained of chest pain and was taken to the medical department, where a physical examination and an EKG were performed. Both were normal, and Dr. Kolongo concluded that plaintiff's pain was not cardiac in origin but rather likely was gastrointestinal, and he prescribed a five-day course of calcium carbonate. Id., ¶ 9. A licensed social worker saw plaintiff in July 2015 and plaintiff voiced no concerns about any physical problems. Id., ¶ 10. From that date until October 21, 2015, plaintiff was seen almost daily by an LPN, and the medical records contain no reports that he expressed any complaints about any physical or medical issues. Id., ¶ 13. He was seen in the medical unit for a "chronic care" visit for his allergies in September 2015, and he did not report any incidents of vomiting blood. Id., ¶ 14. At that time plaintiff's weight was noted to have increased to 182 pounds, some 18 pounds more than he weighed when he was received at HRRJ. Id., ¶ 15.

Plaintiff first complained of coughing up blood on October 21, 2015. Id., ¶ 12. He was seen by a nurse practitioner and a chest x-ray was ordered; it was negative. Id., ¶ 16. Plaintiff submitted grievances regarding coughing up blood on October 30 and 31, 2015; both were received on November 2. He was seen the following day by a nurse practitioner who ordered

laboratory studies. Id., ¶ 17. The tests revealed that plaintiff's hemoglobin and hemotocrit counts were within normal ranges, which indicated that he was not anemic and was not experiencing any acute gastrointestinal bleeding. Further, the studies revealed the presence of H. pylori bacteria in plaintiff's gastrointestinal tract, which can cause infection and ulceration. Id., ¶ 18. On November 8, 2015, a nurse practitioner placed plaintiff on a treatment regimen to eradicate the H. pylori infection. It included Omprazole to promote healing and to reduce acid, an antibiotic which was the generic form of Flagyl, which plaintiff misidentifies as "Flagolar," and a bismuth compound which works in conjunction with the antibiotic to destroy bacteria and which also helps manage nausea. Id., ¶ 19.

Dr. Kolongo's first personal involvement with plaintiff after plaintiff complained of coughing up blood occurred on November 9, 2015. At that time Dr. Kolongo ordered that plaintiff receive health shakes and a nutritional supplement three times a day. Id., ¶ 21. The following day, Dr. Kolongo entered an order changing plaintiff's housing status to allow plaintiff to remain in the Medical Housing Unit for 15 days while undergoing treatment for the H. pylori infection. Id. On November 14, 2015, Dr. Kolongo re-wrote the same orders originally entered by the nurse practitioner on November 8 for plaintiff's H. pylori infection, and on November 30 he ordered an abdominal x-ray which revealed no perforation or other abnormal findings. Id., ¶¶ 22-23.

During the entire time plaintiff was housed in the Medical Unit - from November 10 to December 18, 2015 - he was observed daily by a nurse. He denied having any complaints, and nursing assessments revealed no signs of distress. On a single occasion, November 23, 2015, plaintiff reported that he was "spitting up" blood, and Dr. Kolongo was made aware of the

complaint but determined that no additional intervention was required, as plaintiff was clinically stable and was still undergoing the prescribed course of treatment for his H. pylori infection. . Id., ¶ 24.

On March 16, 2017, after receiving the appropriate Roseboro notice, plaintiff filed his Response to Motion for Summary Judgment. (Dkt. No. 33) Plaintiff's statement is neither notarized nor sworn, and thus does not subject the author to the penalty of perjury for any misstatements. Therefore, it would be insufficient to defeat defendants' summary judgment request under any circumstances. Fed. R. Civ. P. 56(e); see United States v. White, 366 F.3d 291, 300 (4th Cir. 2004) (unsworn argument does not constitute evidence to be considered in opposition to summary judgment motion); Price v. Rochford, 947 F.2d 829, 832 (7th Cir. 1991) (verification based on personal knowledge or information and belief is insufficient to oppose a motion for summary judgment because it avoids the possibility of perjury). Moreover, even if plaintiff's statement had been signed under penalty of perjury, the non-moving party may not defeat a properly-supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). Even where the non-moving party in such a situation is a pro se prisoner entitled to liberal construction of his pleadings, a "declaration under oath ... is not enough to defeat a motion for summary judgment. He has to provide a basis for his statement. To hold otherwise would render motions for summary judgment a nullity." Campbell-El v. Dist. of Columbia, 874 F.Supp. 403, 406 - 07 (D.C. 1994); see also, Local Civil Rule 7(K)(3) (to defeat a dispositive motion, a pro se party "must identify all facts stated by the moving party with which the pro se party disagrees and must set forth the pro se party's version

of the facts by offering affidavits ... or by filing sworn statements...."). Here, because plaintiff's response to the Motion for Summary Judgment is unsworn and in substance amounts to a recapitulation of the complaint, it is insufficient as a matter of law to defeat the defendant's Motion for Summary Judgment.

C. Plaintiff's Claim is Unexhausted

Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." See 42 U.S.C. § 1997e(a); Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). As has been recognized previously in this district, "the PLRA amendment made [it] clear that exhaustion is now mandatory." Langford v. Couch, 50 F.Supp.2d 544, 548 (E.D. Va. 1999) (Ellis, J.). A prisoner now must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy or effective. Porter v. Nussle, 534 U.S. 516, 524 (2002). Moreover, an inmate now must exhaust administrative remedies, even if exhaustion would be futile because those remedies would not provide the relief the inmate seeks. Davis v. Stanford, 382 F.Supp.2d 814, 818 (E.D. Va. 2005) (Hilton, J.), aff'd, 127 Fed. App'x 680 (4th Cir. May 10, 2005).

The PLRA requires "proper" exhaustion, which demands "compliance with an agency's deadlines and other critical procedural rules." Woodford, 548 U.S. at 90-91, 93. Proper administrative exhaustion requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d

652, 655 (7th Cir. 2004). In the context of prisoner lawsuits, proper exhaustion provides prisons the opportunity to correct their errors before being hauled into federal court, reduces the quantity of prisoner suits by either granting relief at the administrative level or persuading prisoners not to further pursue their claim in a federal court, and improves the quality of the prisoner suits that are filed in federal court by creating an administrative record for the court to reference. Id. The benefits of proper exhaustion are realized only if the prison grievance system is given a "fair opportunity to consider the grievance" which will not occur "unless the grievant complies with the system's critical procedural rules." Id. at 95; see also Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

When, as here, a Virginia prisoner is confined in a local jail, before bringing an action in federal court he must receive a response to his properly-filed grievance and, if unsatisfactory, he must pursue it through all available levels of appeal before presenting that claim in federal court. In this action, defendant Kolongo has supplied the records pertaining to plaintiff's attempts to seek administrative exhaustion of his claim. (Dkt. No. 30, Ex. C) They reveal that plaintiff submitted two "sick call requests" on October 30 and 31, 2015, both stating that he was coughing up blood. Id., unnumbered pp. 1-2. Thereafter, plaintiff submitted grievances regarding his medical condition on six occasions between February 28 and July 31, 2016. These efforts were insufficient to achieve administrative exhaustion of plaintiff's present claim for two reasons. First, to the extent that any of the responses plaintiff received were unsatisfactory, he failed to pursue his claim through the appellate level, so full administrative exhaustion was not achieved. Perhaps more significant in this case, however, is the fact that none of plaintiff's grievances were filed during the period when he was under Dr. Kolongo's care. Plaintiff entered HRRJ on April

24, 2015, and Dr. Kolongo's employment at HRRJ ended in December 2015. Def. Ex. B, Kolongo Aff. ¶¶ 2, 5. The grievances plaintiff filed with regard to the claim he makes here were filed between February 8, 2016 and July 13, 2016, Def. Ex. C, Grievances, and thus all post-date the period when Dr. Kolongo was involved with plaintiff's medical care. As the defendant's undisputed evidence demonstrates that plaintiff failed properly to exhaust administrative remedies before filing this lawsuit, he is entitled to summary judgment on that basis. See Anderson v. XYZ Corr. Health Servs., 407 F.3d 674 (4th Cir. 2005) (courts have no discretion to dispense with exhaustion requirement in cases where PLRA applies).

D. No Deliberate Indifference

Even if plaintiff's claim had been exhausted, it is apparent that he would not have prevailed on the merits. To establish a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must show that jail officials were deliberately indifferent to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 105 (1976); Staples v. Va. Dep't of Corr., 904 F.Supp. 487, 492 (E.D.Va. 1995). Thus, plaintiff must demonstrate that two distinct elements were present. First, he must show that he suffered from a medical need that was sufficiently serious to warrant constitutional protection. See, e.g., Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious). Second, he must prove that the defendant was deliberately indifferent to that serious medical need. Under this second prong, an assertion of mere negligence or even malpractice is not enough; instead, plaintiff must show that the defendant was deliberately indifferent to his medical condition "by either actual intent or

reckless disregard." Estelle, 429 U.S. at 106; Daniels v. Williams, 474 U.S. 327, 328 (1986); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). To do so, the prisoner must demonstrate that defendants' actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. (citations omitted). Significant here, a prisoner's disagreement with medical personnel over the course of his treatment does not make out a cause of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

It is readily apparent here that plaintiff has fallen well short of establishing a deliberate indifference claim against Dr. Kolongo. Assuming for the sake of this analysis that plaintiff's H. pylori infection and attendant symptoms were a sufficiently serious medical need to warrant constitutional protection, the undisputed facts demonstrate that no intentional indifference or reckless disregard of that condition occurred. When plaintiff began to experience upper GI symptoms in October 2015, his complaints were promptly addressed with testing, medications, lab studies, and a housing change for ongoing treatment and observation. Def. Ex. A. When Dr. Kolongo became personally involved with plaintiff's treatment on November 9, 2015, he continued these treatment measures, ordered nutritional support, had plaintiff transferred into HRRJ's Medical Unit, ordered an abdominal x-ray, and re-ordered plaintiff's previously-prescribed medications. Patently, these measures belie any suggestion that Dr. Kolongo was deliberately indifferent to plaintiff's condition by either intentional indifference or reckless disregard. Any argument to the contrary by plaintiff amounts to no more than his disagreement over the course of the treatment provided by Dr. Kolongo, which as a matter of law is insufficient to establish a cause of action for deliberate indifference. Wright, 766 F.2d at 849. This, even if jurisdiction existed to reach the merits of plaintiff's claim, he would be entitled to no §1983

relief.

E. Plaintiff's Letter/Motion for Extension

After defendant filed his reply to plaintiff's response to the Motion for Summary Judgment, plaintiff submitted a Letter/Motion for Extension, asserting that gets his mail late at his institution and stating that as a result he needs an extension of 60 days to "get everything in order" and to "investigate to get the rest of his paperwork together." (Dkt. No. 36) In legal effect, it appears that the pro se plaintiff is seeking an extension of time within which to file a sur-reply. A court has the discretion to allow a sur-reply where a party brings forth new material or deploys new arguments in a reply brief. See, e.g., Lewis v. Rumsfeld, 154 F.Supp.2d 56, 61 (D.D.C. 2001). Generally, courts allow a party to file a sur-reply only when fairness dictates based on new arguments raised in the previous reply. United States v. Falice, No. 1:04CV878, 2006 WL 2488391 (M.D.N.C. Aug. 25, 2006); Khoury v. Meserve, 268 F.Supp.2d 600, 60506 (D.Md. 2003), aff'd, 85 F. App'x 960 (4th Cir. 2004). Where a party seeks merely to re-open briefing on issues previously raised, a sur-reply should not be allowed. Interphase Garment Solutions, LLC v. Fox Television Stations, Inc., 566 F.Supp.2d 460, 467 (D.Md. 2008).

None of the factors which would warrant allowance of a sur-reply are present here. Defendant's reply to plaintiff's response to the Motion for Summary Judgment (Dkt. No. 35) introduced no new arguments into the lawsuit. In addition, the exhibits filed by defendant in support of his Motion for Summary Judgment demonstrate clearly that plaintiff failed to exhaust his claim administratively, and plaintiff in his response came forward with nothing to rebut or to challenge that conclusion. Plaintiff's current vague and conclusory assertions that he needs more time to "get everything in order" and "get the rest of his paperwork together" contain no

reasonable suggestion that plaintiff if allowed to file a sur-reply now would be able to do so. Accordingly, as fairness does not dictate that plaintiff be allowed to file a sur-reply, and as the record establishes that a sur-reply would be futile, plaintiff's Letter/Motion for Extension, construed as a request to be allowed to file a sur-reply, will be denied.

### III. Conclusion

For the foregoing reasons, defendant's Motion for Summary Judgment must be granted, and judgment must be entered in his favor. Plaintiff's Letter/Motion for Extension, construed as a request to be allowed to file a sur-reply, will be denied. An appropriate Order and judgment shall issue.

Entered this 25th day of May 2017.

/s/
T. S. Ellis, III
United States District Judge

Alexandria, Virginia